

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMIE HAGER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1302** |
| **BURL CAIN, WARDEN** | **SECTION "A"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

___ Fee_____
___ Process_____
_X_ Dktd_____
_√_ CtRmDep_____
___ Doc. No._____

the instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE**

for failure to exhaust state court remedies.

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Jamie Hager, is incarcerated in the Louisiana State Penitentiary in

Angola, Louisiana.[2]  On October 22, 1997, Hager and a co-defendant, Jeremy Mattio,

were indicted in St. Tammany Parish for aggravated rape.[3]  The Louisiana First Circuit

Court of Appeal summarized the facts of the case as follows in relevant part:

> On August 24, 1997, M.J. went swimming, suffered a sunburn, and took
> a nap.  Sometime that evening, her best friend's mother called and asked her to
> drive to a certain house and advise the occupant (who did not have a telephone)
> that a friend of his had been assaulted.  M.J. put on some shoes and left, wearing
> the shorts and shirt she had worn while sleeping.  She was unable to find the
> house on her first attempt and went to a grocery store to call the person who had
> given her directions.  She noticed her clock showed "11:30."
> With revised directions, M.J. was able to locate the house.  However, once
> she drove up the long driveway to the house, she realized no one was home.  She
> turned her vehicle around in an attempt to come out onto the main road facing
> forwards, but the vehicle became stuck in the mud.  She walked up to the main
> road and flagged down a white truck with two men inside.  She told the men her
> vehicle was stuck in the mud and asked for help.  The men tried to push M.J.'s
> vehicle out with their truck and also by hand, but were unsuccessful.  M.J. asked
> the men to take her to a pay phone so she could call her roommate, and the men
> drove her to a store with a pay phone.  M.J. got a busy signal when she used the
> telephone.  She walked back to the men in the truck and told them she wanted to
> wait a few minutes before trying the telephone again.  The men suggested M.J.
> return with them to her car to try to dislodge it "one more time" before coming
> back to the telephone, and M.J. agreed.

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 5, Indictment, 10/22/97; Extract of Minute Entry, 10/22/97.

Once back at the location of M.J.'s vehicle, the truck passenger carried her to her vehicle because of the mud. As the passenger placed M.J. into her driver's seat, she noticed the truck driver had sat down in her vehicle's passenger seat. When M.J. turned her head toward the driver to ask why he was sitting in her vehicle, the passenger put his hands on the waistband of M.J.'s shorts and began pulling. M.J. put her hands on the passenger's wrist and "heard ripping thread." M.J. loudly said, "no," and the driver grabbed her shoulders and pulled her down across the front of her vehicle. M.J.'s shorts were pulled off and her arms were pulled above her head as she struggled, screamed, and cursed. The driver put his hand over her mouth and said, "You can either lie still and make it nice or you can fight and make it bad." The driver held M.J.'s arms, and the passenger put his penis inside of M.J., but did not ejaculate. The men traded places and, while the passenger masturbated and ejaculated on M.J.'s face, the driver put his penis inside of M.J.'s vagina and ejaculated. The men left in their truck. After the men left, M.J. put on her bathing suit bottom and shorts and ran across the road into the woods looking for the first house she could find. She found the home of Bobby and Joann Bigner Burke.

During the incident, the driver struck M.J. in the face and bit her between her breasts. M.J. never consented to having any sexual activity with either the driver or the passenger at any time during the evening of the incident. She identified the defendant Jeremy Mattio in court as the passenger and identified the defendant Jamie Hager in court as the driver.

Neither the defendant Mattio nor the defendant Hager testified at trial, but the defense argued both men had consensual sex with M.J. on the night in question.

(footnotes omitted) State Record Volume 5 of 5, First Circuit Opinion, 2001-KA-0058, p. 2-4, December 28, 2001; State v. Hager, 810 So.2d 581 (La. App. 1st Cir. 2001).

Hager and Mattio were tried before a jury on September 7, 8 and 9, 1999, and were each found guilty of the lesser offense of forcible rape.[4] At a hearing held October 29, 1999, the state trial court denied Hager's motion for a new trial and deferred

---

[4]St. Rec. Vol. 1 of 5, Trial Minutes (5 pages), 9/7/99; Trial Minutes (3 pages), 9/8/99; Trial Minutes, (3 pages), 9/9/99; Jury Verdict, 9/9/99; Trial Transcript, 9/7//99; St. Rec. Vol. 2 of 5, Trial Transcript (continued), 9/7/99; Trial Transcript, 9/8/99; St. Rec. Vol. 3 of 5, Trial Transcript (continued), 9/8/99; Trial Transcript, 9/9/99; St. Rec. Vol. 4 of 5, Trial Transcript (continued), 9/9/99.

sentencing after resolution of the multiple offender bill filed against Hager.[5]    On

November 23, 1999, the trial court sentenced Hager as a third offender to serve life

imprisonment.[6]

Two months after the sentencing, Hager's appellate counsel filed a motion seeking

reconsideration of the sentence, a motion for appeal and a motion for new trial.[7]  The

state trial court denied the motions noting that prior counsel had already filed motions

for new trial and for appeal.[8]

On appeal, Hager's counsel raised six grounds for relief:[9]  (1) The trial court erred

in granting the motion in limine to prevent admission of the victim's clothes as evidence

at trial.  (2) The evidence was insufficient to support the verdict.  (3) The trial court erred

in commenting on the evidence.  (4) The trial court erred by denying the motion for new

trial regarding James Guillory's failure to appear to testify as subpoenaed, and counsel

---

[5]St. Rec. Vol. 1 of 5, Motion Hearing Minutes (2 pages), 10/29/99; Motion for New Trial, 9/15/99; Trial Court Order, 10/29/99; Multiple Bill, 10/27/99; St. Rec. Vol. 4 of 5, Motion Hearing Transcript, 10/29/99.

[6]St. Rec. Vol. 1 of 5, Sentencing Minutes (2 pages), 11/23/99; St. Rec. Vol. 4 of 5, Sentencing Transcript, 11/23/99.

[7]St. Rec. Vol. 1 of 5, Motion for New Trial, 1/19/00; Trial Court Order, 1/26/00; Motion for Appeal, 1/20/00; Trial Court Order, 1/26/00; Motion to Reconsider Sentence, 1/20/00; Trial Court Order, 1/26/00.

[8]St. Rec. Vol. 1 of 5, Trial Court Order, 1/26/00; Trial Court Order, 1/26/00; Trial Court Order, 1/26/00.

[9]St. Rec. Vol. 5 of 5, 1st Circuit Opinion, 2001-KA-0058, 12/28/01; State v. Hager, 810 So.2d at 581.

was ineffective for failing to make efforts to secure Guillory's appearance or move to continue trial. (5) The trial court erred in finding him to be a multiple offender. (6) The trial court erred by denying the motion to reconsider the sentence since the invalid multiple offender adjudication rendered the sentence excessive.

The appellate court affirmed the conviction on December 28, 2001, finding the claims to be without merit.[10]

Hager's counsel thereafter filed a writ application in the Louisiana Supreme Court raising the same issues, **except** that he did not urge that trial counsel was ineffective for failing to make efforts to secure Guillory's appearance or move to continue trial.[11] The court denied the application without reasons on October 25, 2002.[12]

Hager's conviction became final 90 days later, on January 23, 2003, when he did not file a writ application in the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. S. Ct. Rule 13(1).

---

[10]Id.

[11]The court obtained a copy of this writ application, No. 02-K-268, from the Clerk of the Louisiana Supreme Court. It has been filed separately into the record.

[12]State v. Hager, 827 So.2d 1170 (La. 2002); St. Rec. Vol. 5 of 5, 2002-K-0268, 10/25/02.

Almost nine months later, on October 15, 2003, Hager's counsel filed a state court application for post-conviction relief asserting the following grounds for relief:[13]

(1) Ineffective assistance of counsel for the following reasons:

(a) Missing witness at trial - counsel failed to investigate and secure the presence of James Guillory and Mr. Burke to bolster the assertion that the victim was intoxicated and taking Xanax.

(b) Defense preparation - counsel failed to obtain a toxicology report, failed to cross-exam the victim, failed to call any witnesses; counsel's oral argument was only three paragraphs long and counsel wanted to resign so he asked co-defendant's counsel to take over Hager's defense.

(c) Stipulations - counsel offered to stipulate to the positive identification of the two defendants in an effort to keep their mug shots from being admitted; counsel stipulated to the identification of the co-defendant's palm prints; counsel stipulated to the qualifications of Carolyn Booker, the expert in forensic analysis, which in turn confirmed the validity of the scientific evidence from the rape kit; counsel stipulated to the DNA findings of Ann Montgomery; and counsel failed to question the victim regarding her unsure identification of the co-defendant.

(d)(i) Intoxication/consent - counsel failed adequately to establish the victim's intoxication, her use of Xanax or the existence of her prior DWI record and counsel failed to obtain the victim's medical records or toxicology reports on the level of alcohol in her system on the night of the alleged rape.

(d)(ii) Consent-Mattio - the co-defendant chose a consent defense which was error in light of the possible misidentification and Hager's counsel failed vigorously to pursue the consent defense which may have been forced upon him.

(e) Counsel discouraged Hager from testifying because of his prior criminal record, which prevented him from explaining the consensual nature of the encounter.

(2) Trial counsel was denied important impeachment evidence because the State did not disclose the victim's DWI record.

On December 4, 2003, the state trial court denied the application pursuant to La. Code Crim. P. art. 930.3[14] and 930.2[15] for Hager's failure to prove grounds upon which

---

[13]St. Rec. Vol. 5 of 5, Application for Post Conviction Relief, 10/15/03.

[14]Art. 930.3 sets forth the following grounds for which post conviction relief will be granted: (1) The conviction was obtained in violation of the state or federal constitution. (2) The court exceeded its jurisdiction. (3) The conviction or sentence subjected the defendant to double jeopardy. (4) The

relief could be granted and because the claim of ineffective assistance of counsel related to the nonappearance of a subpoenaed witness was repetitive.[16]

Two months later, on February 13, 2004, Hager's counsel filed a motion for extension of time to file an untimely writ application in the Louisiana First Circuit.[17] The state trial court granted the motion.[18] Hager's counsel thereafter filed a writ application with the Louisiana First Circuit on March 11, 2004, within the period allowed by the trial court.[19]

The Louisiana First Circuit denied the application on July 23, 2004, finding no error in the trial court's ruling that it had already determined the sufficiency of the evidence on direct appeal and that Hager failed to demonstrate any deficiency in his trial counsel's performance.[20]

---

limitations on the institution of prosecution had expired. (5) The statute creating the offense for which the defendant was convicted and sentenced is unconstitutional. (6) The conviction or sentence constitute the ex post facto application of law in violation of the state or federal constitution.

[15]Art. 930.2 provides that "the petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted."

[16]This court obtained a copy of this order from the State through the Office of the Clerk of the 22nd Judicial District Court in St. Tammany Parish. The order has been separately filed in the record.

[17]St. Rec. Vol. 5 of 5, Motion of Intent to Take Writs and for Extension of Time, 2/13/04.

[18]St. Rec. Vol. 5 of 5, Trial Court Order, 2/17/04.

[19]The record does not contain a copy of this writ application. The filing date was obtained by my staff from the Clerk of the Louisiana First Circuit Court of Appeal.

[20]St. Rec. Vol. 5 of 5, 1st Cir. Order, 2004-KW-0531, 7/23/04.

On August 23, 2004, Hager's current counsel filed a writ application in the Louisiana Supreme Court asserting the following grounds for relief, some of which had not previously been presented to the lower state courts:[21]

(1)  Ineffective assistance of counsel for the following reasons: (a) Failure to ensure the presence of material witnesses - counsel failed to secure the presence of James Guillory at trial and at the hearing on the motion for new trial and counsel failed to investigate the testimony of Mr. Burke, who told his wife he smelled alcohol on the victim's breath. (b) Defense investigation - counsel failed to obtain a toxicology report and telephone records, counsel failed to present expert testimony regarding the effects of Xanax, counsel failed to call known witnesses, Ms. Canady[22] and Sherry Dossman, to establish the time line of events. (c) Defense at trial - counsel asked the victim about her first DWI but failed to ascertain information regarding her then pending DWI to establish her drinking problem, counsel failed to investigate or pursue evidence regarding the effects of alcohol and Xanax, and counsel's closing argument was only three paragraphs long, which is not vigorous advocacy, and co-defendant's counsel was more extensive. (d) Defense strategy - counsel failed to present adequate evidence of consent to support the defense theory, counsel failed to allow the defendants to testify, counsel failed to ask for a continuance or for the opportunity to interview Mr. Burke, counsel failed adequately to object to the untimely notice of Mr. Burke's statement regarding the smell of alcohol on the victim, counsel failed to object to the expert qualifications of Dr. Stafford to testify regarding rape victims and counsel failed to challenge the doctor's opinion regarding signs of physical trauma after a rape. (e) Unreasonable failure to conduct adequate voir dire - defense counsel's voir dire was cursory, incomplete and inadequate, counsel did not ask about alcohol abuse, pretrial publicity, a defendant's right not to testify and responsive verdicts, counsel only did limited questioning about being victims of a crime and their ability to deliberate in a rape case, counsel failed to question regarding the issue of consent, a juror had to volunteer his service as a military policeman, counsel allowed a prison worker to be seated as a juror, counsel's inadequate voir dire resulted in prejudice from the inability adequately to use their challenges. (f) Predicate conviction inadequate for multiple bill enhancement - the evidence did not support that the predicate offense from Washington Parish was

---

[21]The court obtained a copy of this writ application, No. 04-KP-2168, from the Clerk of the Louisiana Supreme Court.  It has been filed separately into the record.

[22]Incorrectly referred to by counsel as Ms. Kennedy.

8

constitutionally sound. (g) Ineffective assistance of appellate counsel - appellate counsel failed to raise the issue of ineffective voir dire on appeal and appellate counsel failed to object to the use of the Washington Parish conviction as a predicate offense.

(2) Impeachment evidence was improperly withheld from the defense - counsel was denied important impeachment evidence because the State did not disclose the victim's DWI record and the Confrontation Clause was violated because the victim could not be impeached with the evidence.

The Louisiana Supreme Court denied the application without reasons on January 14, 2005.[23]  Hager's counsel filed a request for reconsideration on January 28, 2005, which was denied without reasons on March 24, 2005.[24]

## II.   FEDERAL HABEAS PETITION

On April 4, 2005, Hager's counsel filed a petition for federal habeas corpus relief seeking relief on the following grounds:[25]

(1)(A) Trial counsel was per se ineffective under United States v. Cronic, 466 U.S. 648 (1984), in that his performance rendered the adversary process itself presumptively unreliable. Counsel asked co-defendant's counsel to take over the case, he was undergoing treatment for cancer at the time, he did not pursue an actual innocence theory, his opening and closing statements were too brief, he inadequately questioned witnesses, and no questions were asked of the victim.

(1)(B) Petitioner was denied effective assistance of trial counsel under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), for the following reasons:

---

[23]State ex rel. Hager v. State, 889 So.2d 265 (La. 2005); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2004-KP-2168, 1/14/05.

[24]State ex rel. Hager v. State, 896 So.2d 1021 (La. 2005); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2004-KP-2168, 3/24/05. The record does not contain a copy of the request for reconsideration. The filing date was obtained from the Clerk of the Louisiana Supreme Court.

[25]Rec. Doc. No. 1, Petition, p. 5, Memorandum in Support, 2-3.

(a) Inadequate investigation. Counsel failed to interview known witnesses Heather Canady, Cole Nuffer, and Sherry Dossman. He failed to secure their appearances for trial. He failed to secure additional DNA testing of the rape kit.

(b) Counsel failed to secure toxicology reports on the victim or telephone records.

(c) Counsel failed to present expert testimony regarding the effects of Xanax.

(d) Counsel failed to ensure the presence of material witnesses, James Guillory and Mr. Burke.

(e) Counsel failed to support the defense at trial because he did not question the victim about her prior DWI conviction, he did not investigate to discover for himself the existence of the second DWI pending at the time of trial and his closing argument was too short.

(f) Counsel failed to execute a proper defense strategy because (i) he failed to prove consent, (ii) the defendants did not testify, (iii) he failed to seek a continuance or object when the State announced before trial that Mr. Burke smelled alcohol on the victim's breathe, (iv) he failed to object to Dr. Stafford's lack of expert qualifications regarding rape victims and allowed him to give improper medical opinion by asking poor questions, (v) he stipulated to DNA evidence which established that the co-defendant was present.

(g) The voir dire questioning was inadequate and failed to disclose possible cause challenges. No questions were asked regarding alcohol abuse, pretrial publicity, a defendant's right not to testify, responsive verdicts, and failure to object to a jail worker being empaneled.

(h) Appellate counsel was ineffective for failure to raise the inadequate voir dire issue on direct appeal.

(2) The State withheld impeachment evidence based on Canady's statements from which the State should have known of the victim's level of intoxication and promiscuity. The State failed to disclose the victim's second DWI charge and should have provided a rap sheet to the defense.

In support of the ineffective assistance of counsel claims, Hager submits the affidavit of a private investigator, Jennifer Vitry, who located and interviewed Heather Canady, the victim's former roommate, by telephone on March 31, 2005[26] and April 2,

---

[26] The affidavit reflects that the first interview was conducted on March 31, 2004. However, counsel indicates in the memorandum that the interview took place on March 31, 2005.

2005.[27]    Vitry's affidavit summarizes Canady's alleged statements regarding her recollection of the events on the night in question, the victim's intoxication level that night and her general demeanor.

Hager also submitted a transcript of an interview of James Guillory, the ambulance driver, conducted by another investigator, Bernie Chatham, on July 13, 1999.[28]   Hager also filed a supplement to the petition, which includes Chatham's affidavit verifying the transcript.[29]   The supplement also incorporates a second affidavit from Vitry, who interviewed Cole Nuffer, Canady's fiancé at the time, by telephone on June 15, 2005.[30]   He too discussed the victim's activities on the night in question.

Hager argues, as he did in the original petition, that these statements are from witnesses who were known to trial counsel but whose testimony was not pursued.   Hager further contends that the new witness statements and recollections of the events on the night in question establish and support the finding that counsel was ineffective at trial and at the subsequent hearing on the motion for new trial and that the victim lied on the stand.

---

[27]Rec. Doc. No. 1, Exh. 2.

[28]Rec. Doc. No. 1, Exh. 6.

[29]Rec. Doc. No. 12, Exh. 1.

[30]Rec. Doc. No. 12, Exh. 2.

The State responded to Hager's original petition by erroneously suggesting that this court apply the standard of review required for issuance of a certificate of appealability.[31] The State also argues that trial counsel's performance met the standards set forth in <u>Strickland</u>. The State alleges that the potential witnesses were not eyewitnesses to the rape and there is no showing that their testimony would have changed the verdict or decisions in the state courts. The State also argues that Canady's new statements to the private investigator contradict those given to police investigators in 1997. The State argues further that if the victim was intoxicated as suggested by these witnesses, this would have raised the issue of whether she was too intoxicated to consent, the main defense theory. Similarly, the DWI pending at the time of trial would not have shed any light on whether the victim was raped in 1997. The State also alleges that medical records and testimony from the defendants would not have altered the evidence of rape already before the jury through the State's evidence. Finally, the State argues that the issue of inadequate voir dire is raised for the first time in this federal petition and has therefore not been exhausted in the state courts.

In his memorandum in reply to the State's opposition, Hager reiterates the arguments presented in the original petition and argues that the new testimony received

---

[31]Rec. Doc. No. 8.

from Canady and Nuffer establishes not only the time line of events but also that the victim was drunk, indiscrete, and lied about being raped by two men.[32]

## III.   STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[33] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Hager's petition which was filed by counsel on April 4, 2005.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[32]Rec. Doc. No. 11.

[33]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

My review of the record reflects that Hager's petition is timely filed.[34]  The State

has raised the issue of Hager's failure to exhaust.  For the following reasons, I find that

Hager has <u>not</u> exhausted his state court remedies with respect to several of his claims or

legal theories and the petition must be dismissed <u>without</u> prejudice for that reason.

IV.   EXHAUSTION OF STATE COURT REMEDIES

"A fundamental prerequisite to federal habeas relief under § 2254 is the

exhaustion of all claims in state court prior to requesting federal collateral relief."

<u>Whitehead v. Johnson</u>, 157 F.3d 384, 387 (5th Cir. 1998) (citing <u>Rose v. Lundy</u>, 455

U.S. 509, 519-20 (1982)); <u>accord</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973);

<u>Nobles</u>, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state

remedies have not been exhausted as to <u>all</u> of the federal court claims." <u>Whitehead</u>, 157

F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20) (emphasis

added).

"The exhaustion requirement is satisfied when the substance of the federal habeas

claim has been fairly presented to the <u>highest</u> state court." <u>Id.</u> (citing <u>Picard v. Connor</u>,

404 U.S. 270, 275-78 (1971)) (emphasis added).  "State prisoners must give the state

courts one full opportunity to resolve any constitutional issues by invoking one complete

---

[34]The procedural history outlined in this report reflects that only 313 days of the one-year federal filing period under the AEDPA had elapsed before the filing of this federal habeas corpus petition on April 4, 2005.

round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan, 526 U.S. at 845; accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court. Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

Thus, to have exhausted his claims in state court, Hager must fairly present the same claims and legal theories he urges in this federal court to the Louisiana Supreme Court. The State argues that Hager failed to exhaust state court remedies with respect to the issue of the inadequacy of counsel's voir dire examination. Hager did not respond to this argument.

This report sets out a detailed outline of Hager's claims presented to the Louisiana Supreme Court on direct appeal and on post-conviction review. Comparing those claims and legal theories to the ones raised in Hager's federal petition discloses that Hager

dedicated four pages of his last writ application to the Louisiana Supreme Court to the issue of the inadequacy of counsel's voir dire examination.[35]  The State's suggestion otherwise is in error and that claim is exhausted.

However, Hager now raises several claims and/or legal theories in his federal petition that were <u>not</u> raised in either of his Louisiana Supreme Court writ applications.

In his first claim before this court, Hager alleges that trial counsel was per se ineffective under the reasoning of <u>United States v. Cronic</u>, 466 U.S. 648 (1984).  In <u>Cronic</u>, the United States Supreme Court held that when counsel fails to subject the prosecution's case to meaningful, adversarial challenge, then the trial is rendered unfair and unreliable:

> The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted--even if defense counsel may have made demonstrable errors--the kind of testing envisioned by the Sixth Amendment has occurred.  But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.  As Judge Wyzanski has written: "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." <u>United States ex rel. Williams v. Twomey</u>, 510 F.2d 634, 640 (CA7), <u>cert. denied sub nom. Sielaff v. Williams</u>, 423 U.S. 876, 96 S. Ct. 148, 46 L. Ed.2d 109 (1975).

(footnotes omitted) <u>Cronic</u>, 466 U.S. at 656-57.

---

[35]<u>See</u> La. S. Ct. Writ Application, 04-KP-2168, p. 15-19, separately filed from the state court record.

Hager concedes that this theory was not raised in the state court by post-conviction counsel, but argues that the claim rests on the same allegations used to support the Strickland claim.[36] Nevertheless, the state courts have not had an opportunity to consider this alternative theory and the facts alleged in support thereof. Hager now argues that his co-defendant's counsel can establish that his trial counsel's physical health and efforts to be relieved of his duties led to the outcome of the trial and/or the failure to pursue an actual innocence claim. This theory and claim are not exhausted.

Hager also now suggests that a third witness, Cole Nuffer, can offer testimony which would undermine the State's case and the victim's testimony at trial. Nuffer was not offered to the Louisiana Supreme Court as a potential witness.

It is also conceded by Hager that the affidavits of the investigators, the alleged statements of Nuffer, and the new statements of Canady were obtained after the Louisiana Supreme Court's review was completed. The court clearly could not have considered the impact or existence of those statements when they had not yet been taken.

I recognize that the fact that this "new evidence" was not presented below does not end the exhaustion inquiry. "'[A]s a general rule dismissal is not required when evidence presented for the first time in a habeas proceeding supplements, but does not fundamentally alter, the claims presented to the state courts.'" (emphasis in original)

---

[36]Rec. Doc. No. 1, Memorandum, p. 13.

Morris v. Dretke, 413 F.3d 484, 491 (5th Cir. 2005) (quoting Anderson v. Johnson, 338 F.3d 382, 386-87 (5th Cir. 2003)).  However, "'evidence that places the claims in a significantly different legal posture must first be presented to the state courts.'"  Id., 413 F.3d at 491 (quoting Anderson, 338 F.3d at 387).  The exhaustion inquiry is therefore a case and fact specific determination of whether additional evidence fundamentally alters or merely supplements the state petition.  Id.

I find that the "new evidence" submitted by petitioner in this court for the first time, the investigators' affidavits and the alleged statements of Canady and Nuffer, fundamentally alters the claims presented to the Louisiana Supreme Court for the following reasons.

Hager has consistently argued that counsel should have pursued evidence of the victim's level of intoxication or medication use to question her recollection concerning giving consent to the sexual acts.  He has also argued that Dossman and Canady could have established a time line of events to establish the consensual nature of the sexual acts.  These arguments are not new and to the extent the "new evidence" addresses them, they are merely supplemental.

However, Hager now seeks to use the new evidence to support the contention that the victim not only lied at trial about drinking that night, but she also lied about her other activities that night and, most importantly, the fact that both men had sexual intercourse with her.  This assertion was not before the state courts and was not urged until Canady

18

made the statement to Hager's investigator. This "new evidence" also forms the basis for another unexhausted claim, that counsel should have pursued additional DNA testing of the rape kit. For these reasons, I find that the affidavits and new statements of Canady and Nuffer fundamentally alter the claims before the state courts and present (or at least allege) evidentiary support for his ineffective assistance of counsel claim that was never presented to the state courts. This renders the federal claims unexhausted. Graham v. Johnson, 94 F.3d 958, 969 (5th Cir. 1996).

As mentioned above, Hager further alleges that counsel was ineffective for failure to obtain additional DNA evidence of the rape kit which was not secured for use at trial. This claim is based on the new statements made by Canady in which she now indicates that the victim said that only one of the men raped her. This issue has not been raised before the state courts and is unexhausted.

Along those same lines, Hager now complains that counsel was inadequate for stipulating to DNA evidence which placed the co-defendant at the scene. He also argues for the first time that this DNA evidence, coupled with Canady's new statements, would have supported an actual innocence defense, which was not pursued by trial counsel. Hager has not raised this issue or these related arguments to the Louisiana Supreme Court and they are not exhausted.

19

Finally, Hager now alleges that appellate counsel was ineffective for failure to raise the inadequacy of trial counsel's void dire on direct appeal. Hager has not raised any claims about the effectiveness of appellate counsel in the state courts.

Because Hager presents new legal theories and claims in this federal application that were not raised to the Louisiana Supreme Court, he has failed to exhaust available state court remedies as to the claims set forth above. Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420). The record discloses no good cause for Hager's failure to exhaust these claims and this court can find none from the record. Rhines v. Weber, 125 S. Ct. 1528, 1535 (2005). Therefore, this mixed petition containing both exhausted and unexhausted claims should be dismissed without prejudice to require petitioner to complete exhaustion of state court remedies. Pliler v. Ford, 542 U.S. 225, __, 124 S. Ct. 2441, 2447 (2004) (quoting Rose v. Lundy, 455 U.S. 509, 510 (1982)); Whitehead, 157 F.3d at 387.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition of Jamie Hager for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10)

20

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).


Houma, Louisiana, this ____5th____ day of October, 2005.



JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE